# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# IN ADMIRALTY

## CASE NO. 19-61655-CIV-ALTMAN

**IN RE:**

**FREEDOM UNLIMITED,**
*as Owner of the M/Y Freedom, a 2000 230' Benetti Motor Yacht (IMO 8975067) in a Cause of Exoneration from or Limitation of Liability*
_____/

## **ORDER**

On August 21, 2019, the Claimant, Joshua Bonn, filed a Motion to Dismiss, Stay, and/or Lift the Injunction (the "Motion") [ECF No. 12]. On September 4, 2019, the Petitioner, Freedom Unlimited ("Freedom"), filed a Response in Opposition (the "Response") [ECF No. 19]. And the matter ripened on September 13, 2019, when Bonn filed his Reply (the "Reply") [ECF No. 31].

On September 5, 2019, this Court referred the Motion to Magistrate Judge Patrick M. Hunt for a Report and Recommendation, *see* Order of Referral [ECF No. 23], which Judge Hunt submitted on December 19, 2019, *see* Report [ECF No. 49]. On January 2, 2020, Freedom timely filed its Objections to that Report (the "Objections") [ECF No. 49].

## **STANDARD OF REVIEW**

Because Freedom timely objected to the Report's "disposition," this Court must review that disposition—at least those aspects of the disposition to which the Objections are directed—*de novo*. FED. R. CIV. P. 72(b)(3).

# THE FACTS

In December of 2018, Freedom hired Bonn to work aboard the M/Y Freedom as a deckhand. *See* Mot. at 1. Freedom owns the "M/Y Freedom," a two-hundred-and-thirty-foot motor yacht built by Benetti in 2000. *See* Complaint for Exoneration (the "Complaint") [ECF No. 1] at 1. On January 4, 2019, the M/Y Freedom was moored dockside at a facility near Dania Beach, Florida, that was owned and operated by the second Claimant, Taylor Lane Yacht and Ship Repair ("Taylor Lane"). *See id.* ¶ 8. While Taylor Lane was performing needed repairs on the M/Y Freedom—including a complete repaint of the yacht—Bonn fell from a scaffold that was erected on the port side of the vessel and was injured. *See id.* ¶ 10; Mot. at 2.

In May of 2019, Bonn filed a lawsuit in Florida Circuit Court against both Freedom and Taylor Lane under the "saving to suitors clause," 28 U.S.C. § 1331(1). *See* Mot. at 2–3. On July 3, 2019, Freedom filed in this Court a Petition under the Limitation Act, 46 U.S.C. § 30505 *et seq.*, to limit its liability to the value of the M/Y Freedom, *see* Complaint for Exoneration [ECF No. 1]—which Freedom fixed at $28,893,000, *see* Ad Interim Stipulation [ECF No. 4]. On July 19, 2019, this Court enjoined the pending state-court action and ordered Freedom to publish notice of its Petition to potential claimants. *See* July 19, 2019 Order [ECF No. 7].

Following proper publication of that notice, *see* Aff. of Proof of Publication [ECF No. 14], only two claimants—Bonn and Taylor Lane—filed claims in this Court, *see* Claim by Joshua Bonn [ECF No. 11]; Claim by Taylor Lane [ECF No. 13]. Specifically, Bonn asserted claims of Jones Act negligence and unseaworthiness and sought damages for the injuries he sustained aboard the M/Y Freedom. *See* Claim by Joshua Bonn at 9–12. Taylor Lane, for its part, sought contractual indemnification, contractual contribution, and "contractual attorney's fees." Claim by Taylor Lane at 2–5. Bonn then filed his Motion to Dismiss, in which he proffered six stipulations and sought

permission to pursue his common law remedies in state court. *See generally* Mot.

In his Report, Magistrate Judge Hunt concluded that Bonn's Motion should be granted. *See generally* Report. Relying on the "single claimant exception," the Report found that Bonn's stipulations sufficiently protected Freedom from any excess judgment Bonn might win in state court. *See id.* In saying so, the Report discounted Freedom's argument that Taylor Lane's claim—for contractual indemnification and attorneys' fees—might, when added to Bonn's judgment, cause Freedom's liabilities to exceed the M/Y Freedom's value. *See* Report at 2 n.1.

Freedom objects to the Report's determination that Bonn can, as it were, "cure" the "multiple-claimants-inadequate-fund" problem where, as here, a second claimant (Taylor Lane) has asserted a claim for indemnification and attorneys' fees. *See* Objections at 2–3. As Freedom sees it, Bonn cannot—indeed, he does not—stipulate that Taylor Lane's attorneys' fees, when added to whatever judgment Bonn ultimately receives, will be equal to, or less than, the M/Y Freedom's value. *See id*. Without such a stipulation, Freedom says, Bonn should be required to litigate his claims here in federal court. *See id.* at 2.

**THE LAW**

Article III, Section 2 of the United States Constitution vests federal courts with original jurisdiction over "all Cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2. But, through Section 9 of the Judiciary Act of 1789—known as the "saving to suitors clause"—Congress preserved the rights of those injured at sea ("suitors") to pursue their common law remedies in the forum of their choosing. *See* Judiciary Act of 1789, 1 Stat. 73, sec. 9, *now codified at* 28 U.S.C. § 1333(1) ("saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."); *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001) (the "saving to suitors clause" grants federal and state courts concurrent

jurisdiction over *in personam* maritime actions).

In 1851, hoping "to encourage ship building and to induce capitalists to invest money in this branch of industry," Congress passed the Limitation Act,[1] which "exempt[s] innocent shipowners from liability, beyond the amount of their interest," where the liability was incurred without the owner's "privity or knowledge." *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. 104, 121 (1871); *see also Lewis*, 531 U.S. at 446. Petitions filed under the Limitation Act are strictly *in rem* and must be brought in federal court. *See, e.g.*, *Beiswenger Enter. Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996).

Naturally, "[s]ome tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Lewis*, 531 U.S. at 448. "In resolving this tension, the 'primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum.'" *Beiswenger*, 86 F.3d at 1037 (quoting *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992)). That said, courts may not "transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights . . . . The shipowner's right to limit liability is not so boundless. The Act is not one of immunity from liability but of limitation of it." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152–53 (1957).

In the 169 years since Congress passed the Limitation Act, federal courts across the country have developed a set of doctrines to help balance the shipowners' rights to limit their liability (under the Limitation Act) against the suitors' rights to pursue their common law remedies in state

---

[1] Now codified at 46 U.S.C. § 30505 *et seq.*

4

court (under the "saving to suitors clause"). One such doctrine, the "single claimant exception"—triggered when only one claimant responds to the shipowner's petition—allows the single claimant to "try liability and damages issues in another forum [e.g. in state court] by filing stipulations that protect the shipowner's right to have the admiralty court ultimately adjudicate its claim to limited liability." *Beiswenger*, 86 F.3d at 1037 (citations omitted). "If the state court (or the law side of the federal court) holds the vessel owner liable for the accident and assesses damages exceeding the limitation fund, the parties must return to the admiralty court for a determination of the privity or knowledge issues." *Id.* at 1038 (citations omitted).

Problems arise, however, when (as here) multiple claimants come forward. Because no single claimant can stipulate to the total amount of damages the other claimants might seek, the claimants may ultimately obtain judgments that, when added together, exceed the vessel's fixed value. *Id*. In these "genuine 'multiple-claims-inadequate-fund' cases, the courts have not allowed damage claimants to try liability and damages issues in their chosen fora, even if they agree to return to the admiralty court to litigate the vessel owner's privity or knowledge." *Id.* (citing *Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 549–50 (5th Cir. 1960)). Instead, the claimants in a "multiple-claimants-inadequate-fund" scenario must try their cases in the admiralty court, without the benefit of a jury, before that court may distribute the assets in the limitation fund via a procedure known as a *concursus*. *See Beiswenger*, 86 F.3d at 1036.

To overcome this problem—and to give effect to the guarantees expressed in both the Limitation Act and the "saving to suitors clause"—federal courts generally allow multiple damage-claimants to proceed in state court only when *all claimants* file "appropriate stipulations," which in turn create the "functional equivalent" of a single-claim scenario. *Id.* at 1040. In *Beiswenger*, for instance, the Eleventh Circuit affirmed the district court's decision to allow two damage-

claimants—both of whom had stipulated to limit their damages to the vessel's value—to proceed with their negligence action in state court. *See Beiswenger Enter. v. Carletta*, 162 F.2d 97 (Table) (11th Cir. 1998) (appeal after remand).

Notably, in *Beiswenger*, the Eleventh Circuit acknowledged the existence of several "potential" indemnification-claimants—namely, the petitioner's co-defendants in the state court case—who, though they had not yet done so, could one day seek indemnification from the petitioner for any judgment the damage-claimants might, in the future, win from them. *See id.* at 1041–42. But, because those indemnification-claimants had not yet filed their indemnification claims in federal court, the Eleventh Circuit was not faced with the situation presented here: viz. a damage-claimant (Bonn) who has arguably filed the "appropriate stipulations" and a live—as opposed to a "potential"—indemnification-claimant (Taylor Lane) who has not.

And the other circuits are decidedly split on the question of whether the presence of a non-stipulating indemnification-claimant creates an insoluble "multiple-claimants-inadequate-fund" scenario. *Compare S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 645 (6th Cir. 1982) (indemnification claims are necessarily derivative of the damage claims and thus present no "multiple claims" at all), *and Universal Towing Co. v. Barrale*, 595 F.2d 414, 419 (8th Cir. 1979) (same), *with In re Port Arthur Towing Co.*, 42 F.3d 312, 316 (5th Cir. 1995) (per curiam) (indemnifications are separate claims and can create "multiple claimant" problems), *Gorman v. Cerasia*, 2 F.3d 519, 527 (3d Cir. 1993) (same), *and In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 757 (2d Cir. 1988) (same).

But even those courts—like the Second and Fifth Circuits—that treat indemnification claims separately from damage claims are divided on the all-important question of how to resolve the "multiple claimants" issues those claims present. The Fifth Circuit's view is that, before a

6

federal court can lift its Limitation Act injunction over a state-court proceeding, all claimants—damage and indemnification—must agree (or stipulate) to limit their recovery to the value of the vessel. *See, e.g.*, *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996). The Second Circuit, by contrast, has allowed a damage-claimant to overcome the indemnification-claimant's refusal to stipulate in the precise circumstance at issue here: namely, where the damage-claimant "stipulates" not to enforce any judgment in excess of the vessel's value against *either* the vessel owner *or* "any other liable parties who may cross-claim or claim over against [the vessel owner]." *In re Dammers*, 836 F.2d at 759.

In *Beiswenger*, the Eleventh Circuit agreed with the Second, Third, and Fifth Circuits that "potential claims for indemnity or contribution from the vessel owner's co-defendants must be separately considered." *Beiswenger*, 86 F.3d at 1042. And this makes sense. After all, while the damage-claimant's stipulation not to enforce an excess judgment *against the petitioner* might protect the petitioner from an excess liability *vis-à-vis the damage-claimant*, it would not preclude the damage-claimant from pursuing limitless damages against other joint tortfeasors—any one of whom could then seek indemnification from the petitioner for the full amount of the damage-claimant's judgment. And, to the extent the damage-claimant's judgment might exceed the value of the vessel, this not-unlikely procedural reality would render moot the Limitation Act's guarantees in every single case where the shipowner is either a joint tortfeasor or a contractual indemnifier. This cannot be the law.

In either event, as between the Fifth Circuit's all-or-nothing view and the Second Circuit's "any other liable parties" approach, the Eleventh Circuit found the latter's solution to this dilemma more persuasive and expressly permitted the damage-claimants to supersede the (possible) future objections of the "potential" indemnification-claimants by stipulating never to enforce any excess

judgment against *either* the shipowner *or* any other party who might, in the future, look to the owner for indemnification. *See id.* at 1043–44.

With these overarching principles in mind, the Court now turns to the facts of this case.

## ANALYSIS

In his Motion, Bonn asks the Court to lift the injunction over his state-court action and to allow him to pursue his common law remedies there. *See generally* Mot. And, while Taylor Lane has refused to stipulate, *see* Notice of Opposition [ECF No. 28], Bonn has filed stipulations that, he says, create the "functional equivalent" of a "single claimant" scenario. *See* Mot. at 5. The Magistrate Judge agreed. *See* Report.

In its Objections, Freedom advances three principal responses. *First*, citing the Fifth Circuit's approach to indemnification-claimants, it argues that, under the Limitation Act, *all claimants* must stipulate to limitation before a federal court can lift its injunction over a state-court case. *See* Resp. at 3–7; Objections at 3–5. *Second*, it contends that, even if a damage-claimant could overcome an indemnification-claimant's refusal to so stipulate, Taylor Lane's claim for attorneys' fees creates a separate "multiple claimants" scenario as to which Bonn's stipulations are ineffective. *See* Resp. at 7–9; Objections at 4–7. *Third*, it says that, even if this Court ultimately disagrees with its first two propositions, Bonn's stipulations are "inadequate on their face." Objections at 2 n.1. The Court addresses each argument in turn.

### I. The "Single-Claimant Exception"

Freedom starts off on the wrong foot when it mistakenly attempts to distinguish *Beiswenger* on the ground that only one damage-claimant appeared in that case. *See* Resp. at 3–7; Objections at 3–5. But, in fact, *Beiswenger* involved *two* damage-claimants. *See* 86 F.3d at 1040 ("There is no question that the personal injury claim asserted by Kathleen Carletta and the wrongful death

claim asserted by the estate of George Myers are separate claims that would ordinarily require a *concursus.*"). In any event, the primary thrust of Freedom's first argument is that, after *Beiswenger*, courts in this Circuit should follow the Fifth Circuit's all-or-nothing view, which requires all claimants—both damage and indemnification—to stipulate before the district court can lift the state-court injunction. *See* Objections at 6 (citing *Odeco Oil*, 74 F.3d at 675).

But *Beiswenger* specifically rejected the Fifth Circuit's view in favor of the Second Circuit's more nuanced approach when it held that, with appropriate stipulations "promis[ing] not to enforce any state court judgment (which would expose [the petitioner] to liability in excess of the limit) against *any* party, including [the petitioner's] co-defendants, until [the petitioner's] right to limitation is adjudicated in the admiralty court," the damage-claimant could "eliminate[] the possibility that competing claims [would] exhaust the limitation fund before the admiralty court has the opportunity to determine whether to grant limited liability." *Beiswenger*, 86 F.3d at 1043–44. And, of course, that is precisely what Bonn has done here when he submitted the following stipulation:

> That the Claimant will not seek to enforce any judgment rendered in any court, *whether against the Petitioner or another person or entity that would be entitled to seek indemnity or contribution from the Petitioner, by way of cross-claim or otherwise,* that would expose the Petitioner to liability in excess of the to be determined limitation fund, until such time as this Court has adjudicated the Petitioner's right to limit that liability.

Mot. at 8–9 (emphasis added).

Notably, the Eleventh Circuit had an opportunity to adopt Freedom's proposed all-or-nothing rule in a more recent case and chose not to do so. *See Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060 (11th Cir. 1996). In *Suzuki*, multiple damage-claimants filed a motion for summary judgment, which the district court granted. *See id.* at 1062. As in *Beiswenger*, a host of third parties who could seek indemnification—the Petitioner's co-defendants in the underlying

9

state-court case—had not yet appeared in the federal action. *See id.* at 1066. While the Eleventh Circuit ultimately reversed, it was careful to note that its opinion was "not necessarily fatal to the [multiple damage-claimants'] ability to try liability and damages issues against Suzuki in state court," and cited *Beiswenger* for the proposition that "damage claimants in a multiple-claims-inadequate-fund case [can] proceed in state court upon filing of appropriate stipulations." *Id.* (citing *Beiswenger*, 86 F.3d at 1040). Had the Eleventh Circuit wanted to adopt the Fifth Circuit's all-or-nothing view, this portion of the *Suzuki* opinion—a case that, again, indisputably involved (potential) indemnification-claimants—would have made little sense.

In any case, because both *Beiswenger* and *Suzuki* involved *all* "potential" indemnification claims—that is, both tort- and contract-based indemnifications—the Eleventh Circuit never addressed the question of whether, for purposes of the Limitation Act, contract- and tort-based indemnification claims should be treated differently. But that distinction is dispositive here—irrespective of *Beiswenger*'s ratification of the Second Circuit's approach—because Taylor Lane, as noted, seeks only contractual (and not tort-based) indemnification. *See* Claim by Taylor Lane at 2–5. And, as the Court explains in more detail below, the Supreme Court has long held that, under the Limitation Act, contract-based claims are not subject to limitation because their liabilities arise *with*—as opposed to without—the owner's "privity or knowledge." *See, e.g.*, *Richardson v. Harmon*, 222 U.S. 96, 102 (1911); *see also W. E. Hedger Transp. Corp. v. Gallotta*, 145 F.2d 870, 872 (2nd Cir. 1944) (L. Hand, J.) (extending this contractual exception under the Limitation Act to indemnification claims premised on the implied warranty of seaworthiness); *accord S & E Shipping*, 678 F.2d at 644 ("We need not decide whether the indemnity claims based on the license agreement . . . create separate claims rendering this a multiple claims-inadequate fund case. These indemnity claims are based on a personal contract . . . . Liability stemming from

a personal contract is not subject to limitation under the Act.").

In short, Taylor Lane's contractual contribution and indemnification claims do not, as Freedom suggests, present an intractable "multiple-claimants-inadequate-fund" scenario.

## II. Taylor Lane's Claim for Attorneys' Fees

But Taylor Lane, in addition to its contractual contribution and indemnification claims, has also filed a claim for "contractual attorney's fees." Claim by Taylor Lane at 5. Because this claim is undeniably "separate and apart from Petitioner's alleged liability to Bonn," Objections at 3—and given that, at least theoretically, Taylor Lane's attorneys' fees may, when added to Bonn's state-court judgment, exceed the value of the M/Y Freedom—Freedom contends that Bonn's stipulation fails to protect it against an excess judgment, *see id.* at 5.

Here, Freedom is partly right. Taylor Lane will inevitably have to spend money to defend itself against Bonn's state-court complaint. And, unlike its indemnification claims—which derive from, and are thus subsumed within, whatever damages Bonn ultimately wins—Taylor Lane will necessarily incur attorneys' fees and costs that are *in addition to* whatever judgment Bonn obtains. In this respect, as Freedom points out, Bonn's stipulations are inadequate to protect Freedom against the possibility that the combination of Taylor Lane's attorneys' fees and its indemnification claim will exceed the value of the M/Y Freedom. While the Eleventh Circuit has never spoken directly on this issue, Freedom is not without ample support from other circuits. *See, e.g.*, *Gorman v. Cerasia*, 2 F.3d 519, 525 (3d Cir. 1993) ("[A]ll courts have recognized that a multiple claimant situation exists where a third party seeking indemnity or contribution also requests attorneys' fees and costs associated with its claim." (collecting cases)).

But the problem is not as insoluble as Freedom suggests because, as the Supreme Court has long explained, "[t]he limitations acts have long been held not to apply where the liability of

11

the owner rests on his personal contract." *Coryell v. Phipps*, 317 U.S. 406, 410 (1943) (citing *American Car & Foundry Co. v. Brassert*, 289 U.S. 261 (1933)); *Capitol Transp. Co. v. Cambria Steel Co.*, 249 U.S. 334 (1919); *Luckenbach v. McCahan Sugar Co.*, 248 U.S. 139 (1918); *Pendleton v. Benner Line*, 246 U.S. 353 (1918)).

The issue first came up in *Richardson v. Harmon*, where the Court concluded that the Limitation Act "harmonizes with the policy of limiting the owner's risk to his interest in the ship in respect of all claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime *but leaves him liable for his own fault, neglect, and contracts*." 222 U.S. at 106 (emphasis added).

Six years later, Justice Holmes, speaking for a unanimous Court, affirmed this reading of the Limitation Act. *See Pendleton*, 246 U.S. 353. In that case, the vessel owners had entered into a contract, through which they had warrantied the vessel's seaworthiness. The vessel sank, and the owners of the lost merchandise sued the owners, who (like Freedom here) promptly filed in federal court a petition to limit their liabilities under the Limitation Act. Concluding, however, that the Limitation Act does not permit a shipowner to limit his *contractual* liabilities, the district court lifted the Limitation Act injunction, and the Supreme Court unanimously affirmed. As Justice Holmes explained:

> On the proposition that the petitioner is entitled to limit his liability under the act of 1884 it is urged that the act is an absolute limit, irrespective of privity or knowledge, in regard to contracts as well as torts, and that this contract, if it bound the petitioner at all, did so only as an indirect result of its execution. *The last point hardly is intelligible*. . . . The contract was between human beings and the petitioner by his own act *knowingly made himself a party to an express undertaking for the seaworthiness of the ship*. That the statute does not limit liability for the personal acts of the owners done with knowledge is established . . . . We are not disposed to disturb the very strong and deliberate intimations of *Richardson v. Harmon* in their application to the present case. It is said that the owners did their best to make the vessel seaworthy and that if it was not so the failure was wholly without the privity or knowledge of the petitioner. *But that is not the material question in the case of*
12

> *a warranty. Unless the petitioner can be discharged from his contract altogether he must answer for the breach whether he was to blame for it or not.*

*Id.* at 356–57 (emphasis added).

Seventeen years after *Pendleton*, Chief Justice Hughes reaffirmed this basic principle: "The liability thus limited is an imputed liability; it is a liability imputed by law by reason of the ownership of the vessel. *For his own fault, neglect, and contracts the owner remains liable.*" *Am. Car & Foundry Co.*, 289 U.S. at 264 (emphasis added). And, later that same year, the Court extended this principle to *implied* contracts. *See Cullen Fuel Co., Inc., v. Hedger, Inc.*, 290 U.S. 82, 88–89 (1933).

Admittedly, none of these cases dealt with the specific issue presented here—whether an indemnification-claimant's contractual claim *for attorneys' fees* is subject to limitation under the Limitation Act. And, although the Eleventh Circuit likewise has not squarely addressed this question, it has cited with approval the Sixth Circuit's apposite holding in *S & E Shipping Corp. See Beiswenger*, 86 F.3d at 1040. In that case, as here, the non-stipulating claimant sought both indemnification *and* attorneys' fees. *See S & E Shipping*, 678 F.2d at 639. As to the former, the Sixth Circuit held that indemnification claims—whether contract- or tort-based—present no "multiple claims" at all because the amount of the indemnification claim is necessarily equal to the damage-claimant's state-court judgment. *See id.* at 645. Thus, in the Sixth Circuit's view, so long as the damage-claimant stipulates not to enforce an excess judgment against the vessel owner, the indemnification-claimant likewise would have no excess judgment to enforce. But, as the Second, Third, and Fifth Circuits have explained—in holdings *Beiswenger* found more persuasive, *Beiswenger*, 86 F.3d at 1038—the Sixth Circuit's blanket rule does not, in practice, protect the shipowner from an excess judgment the damage-claimant might enforce against the owner's indemnitee, which that indemnitee might then seek to enforce against the owner.

13

In any event, as relevant here, the Sixth Circuit ultimately concluded that the indemnitee's claim for attorneys' fees did present a "multiple-claimants-inadequate-fund situation" because that claim was "separate from any claims for liability" and thus created "the possibility of different and inconsistent judgments" that could well be "in excess of the limitation fund." *S & E Shipping*, 678 F.2d at 646. But, as the Sixth Circuit explained, only *tort-based* attorneys' fees—that is, claims "for attorneys' fees and costs based on the parties' relative degree of negligence"—are "necessarily predicated on the shipowner's personal conduct and thus may form a separate claim." *Id.* at 646 n.18. On the other hand, "attorneys' fees and costs claims based on [the parties'] license agreement . . . stem from a personal contract and, therefore, are not subject to limitation." *Id.* (citations omitted).

All of that said, Freedom is right to note that *Beiswenger*'s approbatory reference to this portion of *S & E Shipping* was indisputably dicta. *See* Objections at 3. And, indeed, even within this Circuit, district courts are split on the issue. *Compare In re Brizo, LLC*, No. 9:18-CV-80855, 2019 WL 670696, at *2 (S.D. Fla. Feb. 19, 2019) (refusing to lift injunction because of the indemnification-claimant's attorneys' fees claim (citation omitted)), *with In re Parker Towing Co., Inc.*, No. CV 17-0489-WS-C, 2018 WL 1220708, at *5 (S.D. Ala. Mar. 8, 2018) (lifting injunction despite indemnification-claimant's attorneys' fees claim).

Faced with this division, this Court must look—first and always—to the text of the statute itself. *See United States v. Turkette*, 452 U.S. 576, 580 (1981) ("In determining the scope of a statute, we look first to its language."). The Limitation Act provides, in pertinent part, as follows:

> **(a) In general.**—Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.

14

**(b) Claims subject to limitation.**—Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

**(c) Wages.**—Subsection (a) does not apply to a claim for wages.

46 U.S.C. § 30505.

The question, then, is whether *ex contractu* claims for attorneys' fees constitute "claims, debts, and liabilities . . . arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner."

They do not. To hold otherwise would be to say that, when a shipowner knowingly enters into a contract by which he promises to pay the debts of another upon the occurrence of a specific event—and where that event then in fact occurs—the resulting "debts" are "incurred, without the privity or knowledge of the owner." As Justice Holmes quipped: "That last point is hardly intelligible." *Pendleton*, 246 U.S. at 356.

"The [Supreme] Court established the personal contract exception because the Act is only intended to limit the shipowner's liability for matters beyond his control. A personal contract is obviously within the control of the shipowner." *S & E Shipping*, 678 F.2d at 645 (citation omitted). Thus, a shipowner's contractual promise to pay—whether that promise covers indemnification claims or attorneys' fees—is a knowing act. And any resulting claim founded on that promise cannot be said to arise from acts "done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30505. Put another way, "[t]he attorneys' fees and costs claims based on the license agreement . . . stem from a personal contract and, therefore, are not subject to

15

limitation." *S & E Shipping*, 678 F.2d at 646 n.18 (citation omitted).[2]

In sum, Taylor Lane's claim for "*contractual* attorney's fees," Claim by Taylor Lane at 5 (emphasis added), is simply not subject to limitation—and, as such, does not create a "multiple-claimants-inadequate-fund" situation.

### III. The Adequacy of Bonn's Stipulations

Freedom's final argument is that Bonn's stipulations are "inadequate on their face." Objections at 2 n.1. Bonn submitted the following six stipulations:

1. That the Petitioner, has the right to litigate the issue of whether it is entitled to limit its liability under the provisions of the Limitation of Liability Act, 46 [U].S.C.§ 181 et seq., in this Court, and this federal Court sitting in admiralty has exclusive jurisdiction to determine that issue.

2. That the Petitioner has the right to have this Court determine the value and the Petitioner's interest in the Vessel, M/Y FREEDOM (IMO 8975067), a 2000 230' Benetti motor yacht and any other vessel determined by this Court to be a proper art of the limitation fund, such value and interest to be the value and interest in the vessel(s) as provided by the applicable federal law immediately following the incident at issue, and this Federal Court has exclusive jurisdiction to determine that issue.

---

[2] Of course, had Taylor Lane advanced a tort-based claim for attorneys' fees, the result *might* have been different—but only maybe, because the Limitation Act limits an owner's liability only for "claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime but leaves him liable for his own fault, neglect, and contracts." *Richardson*, 222 U.S. at 106. In conducting this inquiry into whether the tort arose out of the owner's "fault, neglect, and contracts", courts employ a two-step process:

> First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.

*Hercules Carriers, Inc. v. Claimant State of Florida*, 768 F.2d 1558, 1563–64 (11th Cir. 1985). Some torts, then, will be "done, occasioned, or incurred" *with* the "privity or knowledge of the owner." *See, e.g.*, *Tittle v. Aldacosta*, 544 F.2d 752, 756 (5th Cir. 1977) ("[W]here the operational command of the whole enterprise is in the hands of the owner then present, he is charged with privity and knowledge on usual principles for the negligent acts of those under his effective command." (citation omitted)). In these cases, the owner will be unable to claim the Limitation Act's guarantees.

3. That Claimant will not seek a determination of the issues set forth in paragraphs (1) and (2) above in any court, or any other forum outside of this limitation proceeding, and consents to waive any res judicata and issue preclusion effect the decision, rulings or judgments of any state court, or any other forum outside of this limitation proceeding might have on those issues.

4. That the Claimant will not seek to enforce any judgment rendered in any court, whether against the Petitioner or another person or entity that would be entitled to seek indemnity or contribution from the Petitioner, by way of cross-claim or otherwise, that would expose the Petitioner to liability in excess of the to be determined limitation fund, until such time as this Court has adjudicated the Petitioner's right to limit that liability.

5. In the event this Court determines that the Petitioner is entitled to limit its liability, the Claimant agrees that it will not seek to enforce any judgment that would require the Petitioner to pay for damages in excess of the limitation fund to be determined by this Court.

6. Furthermore, the Claimant stipulates that no judgment against the Vessel Owner will be asserted to the extent it exceeds the value of the limitation fund to be determined by this Court.

Mot. at 8–9.

In Freedom's view, these stipulations are defective because Bonn must "waive the issue of preclusion defense with respect to all limitation issues; including language in the stipulation that protects the vessel owner in case the district court grants exoneration or limitation; and amend claimant's subject stipulation so that it provides claimant will not seek to enforce judgment in any forum, as opposed to just state court." *Id.* (citing *Beiswenger*, 86 F.3d at 1044–45).

*Beiswenger* did hold that, at a minimum, damage-claimants must: (i) waive the defense of issue preclusion with respect to all matters reserved exclusively for the admiralty court's adjudication, *see* 86 F.3d at 1044; (ii) promise not to enforce any judgment in excess of the limitation fund *if* the admiralty court determines that the petitioner's liability is subject to limitation, *see id.*; and (iii) "protect the vessel owner form litigation by the damage claimants in *any* forum outside the limitation proceeding," *id.*

17

But Bonn has satisfied each of these requirements here. In his third stipulation, for instance, Bonn agreed to waive any "issue preclusion effect the decision" of "any court" might have. Mot. at 8. In his fifth stipulation, Bonn promised not to "seek to enforce any judgment that would require the Petitioner to pay for damages in excess of the limitation fund to be determined by this Court"— *if* "this Court determines that the Petitioner is entitled to limit its liability." *Id.* And, finally, in both his third and fourth stipulations, Bonn referenced "any court," *id.* at 8–9—not, as Freedom contends, only a "state court," Objections at 2 n.1. Freedom's Objections, in other words, misread and mischaracterize the plain meaning of the words in Bonn's stipulations.

And, even beyond Freedom's Objections, the stipulations adequately protect Freedom's rights under the Limitation Act.[3] In this respect, the stipulations unambiguously guarantee that: (i) only this Court, sitting in admiralty, will decide whether Freedom's liability (if any) is "subject to limitation"; (ii) no claimant will enforce any judgment—against either Freedom or any party who might cross-claim or counter-claim against Freedom—in excess of the limitation fund until the question of limitation is adjudicated here; and (iii) Bonn will not seek any determination of the extent of Freedom's Limitation Act rights in any other forum.

***

In the Judiciary Act of 1789, Congress guaranteed the rights of suitors injured at sea to pursue their common law remedies in the courts of their choosing. In 1851, to "induce capitalists to invest money in this branch of industry," *Norwich*, 80 U.S. at 121, Congress passed the Limitation Act, which, by its terms, limits an innocent shipowner's liability to the value of his

---

[3] Notably, the Middle District of Florida recently upheld a set of very similar stipulations. *See In re Everglades Airboat Mgmt. LLC*, No. 2:14-CV-380-FTM-29CM, 2014 WL 7375515, at *3 (M.D. Fla. Dec. 29, 2014), *report and recommendation adopted*, No. 2:14-CV-380-FTM-29CM, 2015 WL 307047 (M.D. Fla. Jan. 21, 2015).

interest in the vessel. That Limitation Act "is not one of immunity from liability but of limitation of it." *Henn*, 354 U.S. at 152. For this reason, in construing the delicate interplay between the rights of injured claimants and the rights of shipowners, the Supreme Court has instructed inferior courts not to "transform the [Limitation] Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights." *Id*.

This Court will follow that admonition here. Bonn has agreed to limit his recovery—whether against Freedom or against any other party who might look to Freedom for indemnification—to the M/Y Freedom's value, at least until this Court resolves the question of Freedom's "privity or knowledge." The Limitation Act requires nothing more—and the "saving to suitors clause" demands nothing less.

For the foregoing reasons, the Court hereby **ADOPTS** the Report and Recommendation [ECF No. 49] as follows:

1. The Motion to Dismiss, Stay, and/or Lift the Injunction [ECF No. 12] is **GRANTED IN PART and DENIED IN PART**. The Motion is **DENIED** insofar as it seeks dismissal of this case. The Motion is **GRANTED** to the extent it requests a stay.

2. The Injunction [ECF No. 7] is hereby **LIFTED**.

3. This case is **STAYED** pending the state court's adjudication of Bonn's tort claims.

4. The Clerk of Court is directed to **CLOSE** this case for administrative purposes.

5. If, at any time, Freedom believes that Bonn is not adhering to the letter of his stipulations, it may file a *motion to reopen* this case.

6. The parties are directed to file a **REPORT** informing the Court of the status of the underlying state-court proceedings every **ninety (90) days**, starting from the date of

this Order. The parties are further directed to promptly notify the Court upon resolution of the state-court action.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of February 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record