UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 19-61655-CIV-ALTMAN

IN RE:

**FREEDOM UNLIMITED,**
*as Owner of the M/Y Freedom,*
*a 2000 230' Benetti Motor Yacht*
*(IMO 8975067) in a Cause of*
*Exoneration from or Limitation*
*Of Liability*
_____/

## ORDER DENYING STAY PENDING APPEAL

Joshua Bonn was working as a deckhand aboard the M/Y Freedom when he fell and was injured. *See* Order Lifting Injunction [ECF No. 61] at 2. He sued Freedom Unlimited ("Freedom"), the owner of the vessel, and Taylor Lane Yacht and Ship Repair ("Taylor Lane"), the owner of the boatyard. *See id.* Freedom responded by asking this Court to limit its liability under the Limitation Act, 46 U.S.C. § 30505 *et seq. See id.*

Following publication of the limitation action, two claimants came forward: Bonn and Taylor Lane. *See id.* Bonn asserted claims of Jones Act negligence and unseaworthiness and sought damages for the injuries he sustained. *See id.* Taylor Lane, for its part, brought claims for contribution, *contractual* indemnification, and *contractual* attorneys' fees. *See id.* Specifically, Taylor Lane alleged that the following provision in its long-standing contractual agreement with Freedom governed the vessel's dockage on the day Bonn was injured:

> **5. Responsible Party.** Owner shall be solely responsible for the safety of any person and the property of any person it employs or permits to be on board the Vessel and on the TLYS premises for any purpose, including employees, captain, crew, guests, agents, contractors, subcontractors, workers, vendors, and their employees. TLYS assumes no responsibility and shall not be liable for any claim for loss or damage to property, personal injury or death of any such person unless

> caused by the gross negligence or intentional acts of TLYS. Owner releases and waives any and all claims against TLYS, its management, owners, agents and directors for bodily injury, personal injury, or other harm (including death) to Owner, its guests, family, employees, agents, contractors and subcontractors, while on TLYS premises, unless caused by the gross negligence or intentional acts of TLYS. Owner shall defend and indemnify TLYS, its management, unit owners, agents, and directors against all claims, actions, liabilities and damages for injury to persons (including death) or damage to property arising directly or indirectly out of the use of TLYS's slips or marina facilities by the Owner, its guests, family, employees, agents, contractors and subcontractors, unless caused by the gross negligence or intentional acts of TLYS.

Claim by Taylor Lane [ECF No. 13] at 3–4.

In the face of these claims, Bonn moved this Court to lift the Limitation Act injunction and to allow him to proceed with his tort suit in state court. *See* Motion to Lift Injunction [ECF No. 12]. This Court referred that motion to Magistrate Judge Patrick M. Hunt, *see* Order of Referral [ECF No. 23], who recommended that the injunction be lifted, *see* Report & Recommendation ("Report") [ECF No. 49]. Freedom timely objected to the Report [ECF No. 51].

For two reasons, this Court affirmed the Magistrate Judge's Report and overruled Freedom's objections. *See generally* Order Lifting Injunction. *First*, the Eleventh Circuit has made clear that *damage* claimants who file the appropriate stipulations in federal court may proceed with their damages claims in state court—even though an *indemnification* claimant has refused to stipulate. *See Beiswenger Enter. Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996); *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060 (11th Cir. 1996). Because Bonn filed adequate stipulations, *see* Order Lifting Injunction at 16–18, Taylor Lane's refusal to stipulate did not bar him from proceeding in state court. *Second*, the Supreme Court has repeatedly held that the Limitation Act does not limit a vessel owner's liability for debts the owner incurred as a result of "personal" contracts. *See, e.g.*, *Pendleton v. Benner Line*, 246 U.S. 353, 354 (1918) (Holmes, J.). Given that Taylor Lane's attorneys' fees claim arises from a contract it had with Freedom, the

2

liabilities (if any) that Freedom *might* incur as a result of that contract are *not* subject to limitation. With these two principles in mind, the Court lifted the Limitation Act injunction. *See generally* Order Lifting Injunction.

Now, Freedom has filed a Motion for Stay Pending Appeal (the "Motion") [ECF No. 65]. Bonn filed his Response in Opposition (the "Response") [ECF No. 66], and Freedom filed its Reply (the "Reply") [ECF No. 67]. For good measure, Bonn also filed a Motion for Sanctions (the "Sanctions Motion") [ECF No. 69].

## THE LAW

Federal Rule of Civil Procedure 62 provides:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

FED. R. CIV. P. 62(c). The Supreme Court has described stays pending appeal as a form of "extraordinary relief" as to which the movant bears a "heavy burden." *Winston-Salem/Forsyth Cty. Bd. of Ed. v. Scott*, 404 U.S. 1221, 1231 (1971); *accord Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (describing stay pending appeal as "extraordinary remedy").

A district court may grant a stay pending appeal only if the moving party establishes the following four factors:

> (1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury . . . unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.

*Touchston*, 234 F.3d at 1132.

Regarding the first factor—whether the movant can show "a substantial likelihood that [it] will prevail on the merits of the appeal"—the Eleventh Circuit has appellate jurisdiction, under 28 U.S.C. § 1292(a)(1), to review the dissolution of a Limitation Act Injunction. *See Offshore of the*

3

*Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1257 (11th Cir. 2014). In this Circuit, however, "a district court's decision to stay a limitation action arising under the Limitation Act and to modify a related injunction" is reviewed *only* for an "abuse of discretion." *Id.* (citing *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 440 (2001); *Garrido v. Dudek,* 731 F.3d 1152, 1158 (11th Cir. 2013)). In other words, to establish "a substantial likelihood that [it] will prevail on the merits of the appeal," Freedom must show "a substantial likelihood" that this Court abused its discretion in dissolving the injunction.

Needless to say, the "abuse of discretion standard is not *de novo* review; it is, instead, deferential." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). This standard allows "a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) (quoting *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989)). Indeed, the Eleventh Circuit has said that, "under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010).

## ANALYSIS

### I. Substantial Likelihood of Success on Appeal

In its Motion, Freedom advances two arguments. *First*, it attacks the viability of Taylor Lane's contractual claim for indemnification and attorneys' fees. It contends, for example, that it did not enter into a contract with Taylor Lane, *see* Mot. at 6 n.2 ("Petitioner disputes it entered into the contract [Taylor Lane] seeks to enforce."), and argues that, even if it did, the contract is unenforceable as a matter of law, *see id.* ("Petitioner's alleged promise to indemnify and defend [Taylor Lane] is <u>unenforceable</u> . . . under Eleventh Circuit precedent."). *Second*, Freedom suggests

4

that, even if Taylor Lane's contract claim were viable, this Court acted prematurely in applying the personal-contract exception. *See id.* at 4.

Curiously, Freedom elected *not* to develop these arguments in its motion practice before this Court. In its Response to the Motion to Dismiss [ECF No. 19], for instance, Freedom staked out the all-or-nothing position that, before a court can dissolve a Limitation Act injunction, *all* claimants must stipulate. *See id.* Freedom (notably) took a similar position in its Objections to the Report [ECF No. 51], in which it argued that "Taylor Lane has not joined Claimant's stipulation, and Claimant cannot unilaterally turn a multiple claimant case into a single claimant case." *Id.* at 3.

Strategically, this gamble may well have made sense at the time. After all, if Freedom had succeeded in persuading this Court that Taylor Lane's objection precluded this Court from lifting the injunction, then Freedom could have eliminated Bonn's right to a jury trial.[1] On the other hand, if Freedom had argued only (as it does now) for some limited fact-finding—fact-finding that, as Freedom now claims, must occur *before* any decision on the injunction's viability—Freedom would have (at best) delayed Bonn's right to proceed in state court. Either way, to the extent that Freedom hopes, on appeal, to rely on arguments it failed to raise here, its prospects for success look grim. *See, e.g.*, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994))).

In any event, Freedom's (new) position—marshalled for the first time in its Motion for Stay Pending Appeal—is meritless.

---

[1] As this Court has explained in previous orders, Freedom's all-or-nothing position misstated the law. The Eleventh Circuit has been pellucid that courts may dissolve Limitation Act Injunctions once all *damage* claimants have stipulated. *See Shubert*, 86 F.3d at 1066 (noting that *Beiswenger* "allow[ed] damage claimants in a multiple-claims-inadequate-fund case to proceed in state court upon filing of appropriate stipulations").

5

### A. The Viability of Taylor Lane's Contract Claim

In challenging the *merits* of Taylor Lane's contractual claim for attorneys' fees, Freedom appears to misapprehend the nature of this inquiry. The question is not whether Taylor Lane *will* succeed in its indemnity claim against Freedom. The question, rather, is whether—*if* Taylor Lane does succeed—Freedom's resultant liability would be subject to limitation. After all, if Taylor Lane ultimately fails to prove its contract claim, then Freedom would owe it no attorneys' fees— and Freedom's right to limitation would be secured.

In fact, by attacking the enforceability of the contractual indemnity *as a matter of law*, *see* Mot. at 6 n.2, Freedom has actually suggested that it owes Taylor Lane no attorneys' fees at all, *see id.* (citing *Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II*, 329 F.3d 809, 813 (11th Cir. 2003) (finding that a limitation of liability clause "must not absolve the repairer of all liability and must still provide a deterrent to negligence")). If this is true, then Taylor Lane's claim should be dismissed—leaving Bonn as the only claimant in the case. In that scenario, of course, even Freedom would have to concede that its right to limitation is protected. Far from supporting its view that the Eleventh Circuit will *reverse* this Court's decision, then, Freedom has (perhaps unintentionally) provided the appeals court with an alternative ground on which to *affirm*. *See Long v. Comm'r of IRS*, 772 F.3d 670, 675 (11th Cir. 2014) ("[W]e may affirm on any ground that finds support in the record.").

### B. Dispensing with Freedom's Insistence on More Fact-Finding

Freedom challenges this Court's determination that Freedom's contract with Taylor Lane was "personal" as a matter of law. *See* Mot. at 5–6. In Freedom's view, this Court should have waited for a more developed factual record before making that finding. *See id.* at 6.

In support, Freedom relies on its own mischaracterization of the state of things. So, for instance, Freedom cites *In re Campbell Transp. Co., Inc.*, 937 F. Supp. 2d 796, 807–08 (N.D.W. Va. 2013), for the proposition that a district court may not—as a matter of law—apply the personal-contract exception on a motion to lift a Limitation Act injunction. *See* Reply at 2. But that case said nothing of the kind. In fact, the court concluded only that it did "not feel [] it is appropriate at this time, *without any binding precedent*, to determine whether [the] maintenance and cure claim is in fact exempt from the limitation of liability rules." *In re Campbell*, 937 F. Supp. 2d at 807–08 (emphasis added).

Freedom also quotes from *Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 762 (9th Cir. 1986), for its position that the state-court proceeding will have some preclusive effect on the parties if they return to federal court for a *concursus*. *See* Reply at 2. But Bonn has promised not to enforce any state-court judgment in excess of the limitation fund (either against Taylor Lane or against Freedom) outside of the *concursus* and has agreed to waive any *res judicata* effect the state-court action might have. *See* Order Lifting Injunction at 17. Freedom's preclusion concerns are thus chimerical.

But Freedom does identify other, more relevant cases. *See, e.g.*, *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1168 (5th Cir. Unit A Sep. 4, 1981). In *Signal Oil*, the Old Fifth Circuit traced the evolution of the personal-contract exception and identified its current applications. *See id.* Looking first to the Supreme Court's decision in *Richardson v. Harmon*, 222 U.S. 96 (1911), the Old Fifth Circuit speculated that Justice Lurton's cryptic reference to "contract" claims "could have been read to mean that limitation was available only against tort claims [and] that such a contractual undertaking" would not be subject to limitation. *Signal Oil*, 654 F.2d at 1168. This view of the personal-contract exception has come to be known as the "broad

test." On the opposite end of the spectrum, the Old Fifth Circuit noted, was the opinion of Judge Learned Hand (sitting by designation) in *The Soerstad*, 257 F. 130 (S.D.N.Y. 1919). Under Judge Hand's "narrow test," the "personal contract doctrine" applies only to "situations in which the *breach*, as well as the *execution*, of the contract could be said to be 'personal' to the vessel owner." *Signal Oil*, 654 F.2d at 1168 (emphasis added).

Freedom insists that, in *Signal Oil*, the Old Fifth Circuit—whose decisions are binding here[2]—adopted the narrow test. *See* Mot. at 5. This is untrue. As the *Signal Oil* decision made clear, the Old Fifth Circuit did not, in that (or any other) case, "fill th[e] gap" between the broad and narrow tests. *Signal Oil*, 654 F.2d at 1169. Instead, *Signal Oil* left "further consideration of the scope of the personal contract doctrine to scholarly commentators and to judges directly confronting the issue." *Id.* What *Signal Oil* did say is that some contracts are, *as a matter of law*, personal, *see id*. at 1168 (charter parties are personal), and some are not, *see id.* (bills of lading are not personal). And this acknowledgement that some kinds of contracts can be personal as a matter of law is, of course, fatal to Freedom's argument that the personal-contract exception *can never* be applied in the absence of a developed factual record. *See* Mot. at 5–6.

In any case, in the years since *Soerstad*, courts—including the Second Circuit (where the Southern District of New York sits)—have expanded the contours of the narrow test by ignoring the test's focus on the contract's execution and honing in even more explicitly on whether the contractual *obligation* was "personal" to the shipowner. Perhaps the best example of this expansion comes from the Second Circuit's opinion in *The Nat Sutton*, 62 F.2d 787 (2d Cir. 1933), whose facts were strikingly similar to ours. In that case, the Second Circuit held that a shipowner could not limit its

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

liability under a contract signed *only by its agent* when the contractual obligation was "personal" to the shipowner. *See id.* at 790. The court reasoned:

> As the only way any corporation can make a contract is by an agent, it is plain that the [the Petitioner's agent] could enter into a contract of carriage with [the Claimant] by virtue of its agency in behalf of [the Petitioner] that would be as binding upon [the Petitioner] as though made by any other agent, and, when made within the scope of the agent's authority, *be as much the personal contract of [the Petitioner] as any contract a corporation can make*. Though this contract of carriage was made in the name of the agent, it provided that 'The boat owner and/or operator and/or carrier shall be responsible for their negligence or fault. . . .' So it was expressly agreed that the owner as well as the operator and carrier should 'be responsible' for 'their negligence.'

*Id*. (emphasis added).

That same year, the Supreme Court held that even *implied* contracts—i.e., contracts no one ever signed—could be "personal" to the shipowner and, thus, not subject to limitation. *See Cullen Fuel Co. v. W.E. Hedger, Inc.*, 290 U.S. 82, 88 (1933) ("We see no reason to restrict or modify the rule there announced. The warranty of seaworthiness is implied from the circumstances of the parties and the subject-matter of the contract and may be negatived only by express covenant. It is as much a part of the contract as any express stipulation."); *accord* J. W. CASTLES III, THE PERSONAL CONTRACT DOCTRINE: AN ANOMALY IN AMERICAN MARITIME LAW, 62 YALE L.J. 1031, 1040 (1953) ("The logical consequence of the [Second Circuit's] Breach Rule is that the relationship of the owner to the individual who signs the contract on his behalf is of no significance

9

in governing the scope of the limitation privilege.").[3] Ultimately, though, this (rather interesting) academic discussion is of limited applicability here because, under *any* test, Taylor Lane's contract with Freedom is "personal" and thus not subject to limitation.

*First*, under the broad test, Taylor Lane's claims for indemnification and attorneys' fees would not be subject to limitation because they are "contractual undertaking[s]," not tort claims. *Signal Oil*, 654 F.2d at 1168.

*Second*, under the Second Circuit's Breach Rule, the question is whether the "breach" (or "obligation") of the contract was "personal" to Freedom. In *Signal Oil*, the Old Fifth Circuit explained that, in articulating this element of the personal-contract exception, Judge Hand sought to "restrict[] its application to situations in which the breach . . . could be said to be 'personal' to the vessel owner." *Id*. But, in relation to an indemnity agreement, any discussion of a "breach" is inapposite. The debt resulting from an indemnity agreement flows, not from a "breach" of that agreement, but by the triggering of an "obligation" arising under it. As the Second Circuit has explained:

> [T]he test of the personal contract exception is not merely that the shipowner entered into the contract personally, but is whether the obligation (and therefore the

---

[3] In this (very illuminating) article, the author rightly notes that the Second Circuit's Breach Rule "focuses on the relation of the shipowner to the breach. If the breach resulted from the act of the owner himself, he cannot limit. This, in effect, predicates the right to limit on the terms of the contract. If the promise breached was, by its terms, performable only by the owner himself, limitation is denied. Every case applying this doctrine has involved a breach of a promise to pay in full in the event certain defined losses occur. The promise has either been express in the form of an indemnity agreement or implied in the form of a warranty. In both situations the breach has consisted of the owner's failure to pay a sum of money." CASTLES III, 62 YALE L.J. at 1044. This Breach Rule, then, "is susceptible of construction which will harmonize it with statutory policy, and because this is not true of [any of the other personal-contract tests], the Breach Rule should prevail. So long as the personal contract doctrine persists (and unless some other variation on it is suggested), this doctrine should be identified with the Breach Rule." *Id.*

10

> breach) was one the shipowner was personally bound to perform, rather than one contemplated he would delegate to his agents and servants.

*Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 403 (2d Cir. 2000) (citation omitted); *see also id.* ("The personal contract exception prevents shipowners and bareboat charterers from attempting to limit liability that *they have contracted to bear*." (emphasis added)). The question, then, is this: if, by an indemnity agreement, a shipowner promises that, upon the occurrence of a specific event, it will indemnify (and pay the attorneys' fees of) a third party—and if that event then does, in fact, occur—is the resulting obligation "personal" to the shipowner? Plainly, the answer is yes—because the "obligation" is one the shipowner has "contracted to bear."

*Third*, under the "narrow test," "the personal contract doctrine" applies only to "situations in which the *breach*, as well as the *execution*, of the contract could be said to be 'personal' to the vessel owner." *Signal Oil*, 654 F.2d at 1168. Here, if the "breach" (or "obligation") were personal to Freedom, then its execution would be as well. Taylor Lane, after all, has alleged that Freedom "executed" the contract. *See* Claim by Taylor Lane [ECF No. 13] ¶ 16. Specifically, Taylor Lane says that every "prior agreement between the *parties* included an identical indemnification clause." *Id.* (emphasis added). Moreover, Taylor Lane avers that, "at each call in 2014 to 2017, a contract was entered into *and signed* by the *parties*." *Id.* ¶ 12 (emphasis added). And Taylor Lane's Claim defines "the parties" as "Owner" (that is, Freedom) and "TLYS." *See id.* Taylor Lane has thus entwined the success of its claim with the viability of the contract it claims Freedom itself "executed." *Cf. S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 646 (6th Cir. 1982) ("The attorneys' fees and costs claims based on the license agreement between S & E and the Chessie System stem from a personal contract and, therefore, are not subject to limitation.").

11

Freedom, in short, has articulated the most charitable possible[4] construction of a test the Eleventh Circuit has never adopted—a test the Second Circuit[5] itself has long since modified—and, even under this (most) permissive reading of an as-yet inapplicable test, Freedom loses.

This finding—that indemnification contracts are "personal" *as a matter of law* and thus *not* subject to limitation—is consistent with the decisions of the three federal courts of appeals that have addressed the issue. *See Mediterranean Shipping*, 229 F.3d at 403 (finding that the "third-party indemnity claims against [the petitioner] are based on personal contract, and, as such, they are not subject to limitation under the Act"); *Great Lakes Dredge & Dock Co. v. City of Chicago*, 3 F.3d 225, 232 (7th Cir. 1993) ("We assume, without deciding, that indemnity contracts are 'personal' in the sense that a shipowner may not have the benefit of the Limitation Act against liabilities flowing out of them."), *aff'd sub nom. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995); *S & E Shipping*, 678 F.2d at 646 n.18 ("The attorneys' fees and costs claims based on the license agreement between S & E and the Chessie System stem from a personal contract and, therefore, are not subject to limitation.").

In fact, in its most recent published decision on the Limitation Act, the Eleventh Circuit went even further. *See Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1333 n.3 (11th Cir. 2019). In *Orion Marine*, the court held *both* that contractual indemnification claims are *not* subject to limitation *and* that "claimants" bringing such claims should *not* be considered *at all* in deciding whether a Limitation Act injunction should be lifted. As the court explained:

> The district court suggested that FDOT was a "potential claimant" by way of the indemnification provision in Orion's contract . . . . That is incorrect. The Supreme Court has made clear that contracts entered into by vessel owners are personal and not subject to the Act. *See, e.g.*, *Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261,

---

[4] (from its perspective).

[5] N.B. Again, the narrow test was first propounded by a Second Circuit judge while he was sitting by designation in the Southern District of New York.

>264, 53 S.Ct. 618, 77 L.Ed. 1162 (1933); *Richardson v. Harmon,* 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911). Accordingly, no claim made by FDOT against Orion pursuant to their contract would be subject to limitation, and FDOT could never be a "claimant" in a limitation action.

*Id.*

In other words, Taylor Lane's contract claim will result in one of two—and only two—conclusions: either Freedom "executed" an enforceable contract with Taylor Lane or it did not. If Freedom did, then the contract would be "personal" to Freedom (and not subject to limitation) because the indemnity was one Freedom "contracted to bear"; if it did not, then the whole question of limitation would be moot since Freedom's right to limitation would be preserved. Either way, allowing for a more developed factual record would be a waste of everyone's time.

\*\*\*

Freedom has thus failed to carry its burden of showing "a substantial likelihood that they will prevail on the merits of the appeal." The Eleventh Circuit has held that: (1) with appropriate stipulations, a damage claimant may proceed in state court, *see Shubert*, 86 F.3d at 1066 (citing *Beiswenger*, 86 F.3d at 1040); and that (2) personal-contract claims should not, as a matter of law, be considered in the analysis, *see Carroll*, 918 F.3d at 1333 n.3. This Court's decision to lift the injunction was thus firmly in line with Circuit precedent. Bonn has filed appropriate stipulations to protect Freedom against Taylor Lane's contribution claim, and Taylor Lane's remaining contractual claims are not subject to limitation.

## II.     The Remaining Factors

Normally, a failure to satisfy the first factor in a motion for stay pending appeal dooms the motion. *See, e.g.*, *Int'l Sch. Servs., Inc. v. AAUG Ins. Co.*, 2011 WL 9357633, at \*1–2 (S.D. Fla. Feb. 18, 2011). To be fair, though, a "movant may also have his motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors

13

2, 3, and 4] weighs heavily in favor of granting the stay.'" *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (alteration in original). But these remaining factors do not weigh—heavily or otherwise—in Freedom's favor.

*First*, Freedom cannot show that, if the stay is denied, it will suffer a "substantial risk of irreparable injury." *Touchston*, 234 F.3d at 1132. Notably, a showing of some *possible* irreparable injury is insufficient; instead, a litigant must show a substantial likelihood that it *will be* injured "absent a stay." *Nken v. Holder*, 556 U.S. 418, 426 (2009). This is because a stay is an "intrusion into the ordinary processes of administration and judicial review"—and, thus, "is not a matter of right, even if irreparable injury might otherwise result to the" litigant. *Id.* at 427 (internal citations omitted).

Freedom is not likely to suffer any irreparable injury here. In fact, Freedom will suffer no injury at all unless the following (unlikely) series of events occurs: *First*, Bonn's state-court suit would have to reach the jury *during the pendency of* Freedom's appeal—an unlikely sequence given that "Bonn's counsel . . . intends to move to designate the state court case as 'complex' pursuant to Fla. R. Civ. P. 1.201 . . . [and to increase] the number of witnesses (20-40)." Mot. at 11 n.4. *Second*, the state-court jury would have to award Bonn a monetary judgment—and then give Taylor Lane a sum of attorneys' fees—that, taken together,[6] exceeds $29,893,000.00.[7] *Third*, *after* that (thoroughly one-sided) verdict, the Eleventh Circuit would have to reverse this Court's decision to lift the injunction, *see* Sec. I, *supra*. Needless to say, the chances of any *one* of these events occurring is insubstantial; for all of them to occur together (and in the right order) would

---

[6] Bonn's claim could not, on its own, exceed that amount because he has stipulated to litigate the issue of limitation before *this* Court. *See* Order Adopting R&R [ECF No. 61] at 17.

[7] *See* Stipulation of Value [ECF No. 4] at 2. Of course, if the two awards—Bonn's and Taylor Lane's—came in *below* this amount, Freedom's right to limitation would be preserved.

require a kind of interstellar alignment that, at this stage, appears extremely unlikely. This second factor, then, likewise weighs against a stay.[8]

*Second*, Freedom has failed to show that its requested stay will cause no "substantial harm to other interested persons." In fact, just the opposite is true. The Supreme Court has warned district courts not "to expand the jurisdictional provisions of the [Limitation] Act . . . and transform [it] from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957). This Court has concluded that Taylor Lane's contractual claims are not subject to limitation. Having made that finding, Bonn should not be forced to wait another year (at least) before having his day

---

[8] In its Objections, Freedom does advance a second "substantial injury" argument. Noting that—at some point after this Court's Order Lifting the Injunction—Taylor Lane amended its state-court claims to add a negligence count, Freedom suggests that it *might* now suffer irreparable injury because that negligence claim *may* (either on its own or when combined with Bonn's judgment) exceed the limitation fund. *See* Mot. at 7. This is, of course, true in the abstract. But it does not save Freedom here because: (1) Taylor Lane never asserted its (new) negligence cause of action in the Claim it submitted to this Court [ECF No. 13]; (2) the time for Taylor Lane to amend its Claim has long since passed, *see* Scheduling Order [ECF No. 52]; and, as a consequence of all this, (3) this Court entered an order of default regarding any as-yet unfiled claims, *see* Order of Default [ECF No. 60]. Freedom has thus already won a default judgment against Taylor Lane for this (and any other unraised) claim, which—in practical terms—means that Taylor Lane is forever precluded from making any such claim against Freedom. *Cf. In re Am. River Transp. Co.*, 800 F.3d 428, 441 (8th Cir. 2015) (Riley, C.J., concurring) ("Upon denying the government's motion to file a late claim and concluding there was no claim against Artco, the proper course was . . . to enter a default judgment in Artco's favor as against all properly noticed potential claimants with claims subject to the Limitation Act." (citations omitted)); *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 1002 (D. Ariz. 2006) ("Since the Court concludes that [the potential claimants] have failed to properly file any claim in this action . . . [the shipowner] is entitled to exoneration from liability regarding the injuries suffered by [the potential claimants] and [] this action should be terminated."); *Matter of JWC Marine, Inc.*, 2004 WL 7331288, at *2 (S.D. Fla. Dec. 23, 2004) ("In the above-styled cause, only one suitor, Temkin, has filed a claim and the time has expired for additional claims to be filed. Therefore, Temkin may be permitted to seek remedies in state court." (internal citations omitted)). It goes without saying that Freedom cannot be injured—let alone irreparably so—by a claim Taylor Lane will never, in practice, be permitted to enforce.

in court—particularly where, as here, Freedom has failed to make the requisite showing of *either* a substantial likelihood of success *or* irreparable injury. Note, in this respect, the well-accepted apothegm: *in diem vivere in lege sunt detestabilis* (delays in the law are hateful). *See Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020) ("Because justice delayed is justice denied, these powers ensure that justice is done."); *accord Castlewood Int'l Corp. v. Wynne*, 305 So. 2d 773, 774 (Fla. 1974) ("The maxim that 'justice delayed is justice denied' is fully recognized by our Court and we have consistently attempted to minimize it by placing our cases in the 'jet stream'. [sic]"); Fla. Const. art. 1, § 21 ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.").

*Third*, Freedom has not explained how its sought-after stay would serve the public interest. In analyzing this final factor, courts focus on whether the stay would promote the uniformity of the laws or the interests of third parties. *See, e.g.*, *FAU v. Parsont*, 2020 WL 3064777, at *12–13 (S.D. Fla. June 9, 2020). Neither is implicated here.

Freedom has thus failed to justify its "lesser showing of a substantial case on the merits." *Meese*, 781 F.2d at 1453.

### III. Sanctions

A district court may award sanctions under Rule 11 only "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (citation omitted).

Bonn has failed to make any such showing here. While he has identified one case in which another court in this District denied a motion for a stay pending appeal in this circumstance [ECF No. 69-2], Freedom's motion was not frivolous and does "advance[] a reasonable argument to change existing law." *Anderson*, 353 F.3d at 915. Bonn's Motion for Sanctions is therefore denied.

\*\*\*

After careful review, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Petitioner's Motion for Stay Pending Appeal [ECF No. 65] is **DENIED**.

2. The Claimant's Motion for Sanctions [ECF No. 69] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of September 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record